UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HISPANIC FEDERATION, ALIANZA NACIONAL DE CAMPESINAS, GREENLATINOS, LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATIONAL HISPANIC MEDICAL ASSOCIATION, and SOUTHWEST ENVIRONMENTAL CENTER,<br><br>                Plaintiffs,<br><br>           v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY,<br><br>                Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiffs Hispanic Federation, Alianza Nacional de Campesinas, GreenLatinos, Labor Council for Latin American Advancement, National Hispanic Medical Association, and Southwest Environmental Center (collectively, "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Defendant United States Department of the Army ("Army") for failing to provide an expedited release of requested agency records concerning toxic waste sites at the Fort Bliss Army Base, where the Trump Administration plans to construct detention camps for the purpose of detaining thousands of immigrant children and families.

2. As a part of its "zero-tolerance" immigration policy, the Trump Administration has pursued plans to construct semi-permanent immigration detention camps to detain and hold

1

as many as 20,000 immigrants at the Fort Bliss Army Base ("Fort Bliss") in Texas and New Mexico.

3. Like many military bases, Fort Bliss is known to have areas where toxic substances have been stored and/or disposed of over many years. However, neither the Army nor the U.S. Department of Health and Human Services ("HHS") have released detailed information about the locations of these proposed immigrant detainment camps, nor the potential environmental hazards that could harm the families detained there.

4. On August 17, 2018, Plaintiffs submitted a FOIA request to Defendant for records related to toxic sites and environmental hazards near the proposed detention camps at Fort Bliss. Additionally, Plaintiffs asked that the FOIA request be processed on an expedited basis pursuant to 32 C.F.R. § 286.8(e) in light of the urgent need to inform the public, the imminent threat to the lives and physical safety of the families and children who would be detained at these proposed camps, and the substantial humanitarian interests at stake.

5. Since the FOIA request was submitted, Defendant Army has not responded to Plaintiffs' request for expedited processing or released any records or information in response to their FOIA request.

6. Defendant Army has failed to respond to Plaintiffs' request for expedited processing of their FOIA request within the 10-day timeframe required by FOIA and Department of Defense ("DOD") regulations.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

8. Venue is proper in this district because plaintiff Hispanic Federation resides and has its principal place of business in this judicial district. 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9. Plaintiff Hispanic Federation ("HF"), founded in 1990, is one of the nation's leading Latino nonprofit membership organizations with 100-plus member organizations. With headquarters in New York, offices in Washington, D.C., Connecticut, Florida, and Puerto Rico, and a program footprint in 20 states with significant Latino and immigrant populations, HF works to support Hispanic and immigrant families and strengthen Latino institutions in the areas of education, health, immigration, civic engagement, economic empowerment, and the environment.

10. HF has worked for years using both legislative and grassroots advocacy to support passage of immigration policies that are humane and that provide solutions to fix our broken immigration system. As co-chair of both the Energy and Environment and Immigration Committees of the National Hispanic Leadership Agenda, a broad coalition of 46 national Latino organizations, HF has been a leading Latino voice in rapid response efforts regarding anti-immigrant legislation as well as legislation that causes environmental harm. HF has been present at every major mobilization in support of Dreamers in Washington, D.C., and, most recently, participated in protests at the El Tornillo Detention Center in El Paso, Texas.

11. HF is a nonprofit organization with a mission to protect and promote the public interest especially as it relates to immigrant and Latino communities. HF has extensive outlets for public education and information dissemination and intends to make any information received available to its constituents, and to the broader public, as widely as possible, and at no

charge. HF intends to use its mailing lists, social media platforms, website, and broad network of member organizations, political colleagues and press to disseminate information it receives.

12. Alianza Nacional de Campesinas ("Alianza") is a national farmworker women's organization that was founded in 2011 to address and advance the rights of more than 700,000 farmworker women in the United States through its national coalition. Alianza's members include groups and individuals that are located in El Paso, Texas, an area that will be directly impacted by the proposed immigrant detention camp at Fort Bliss Army base. Since it was founded in 2011, Alianza has called for the fair treatment of immigrant women and children, including refugees and asylees, improved immigration protections and more expedient processing of immigration petitions for those seeking relief.

13. As a part of its immigration advocacy efforts, Alianza has been a part of a broad coalition that has advocated closing family detention centers, and it has raised concerns about violence against immigrant women and children in immigration detention. Most recently, it has called on the U.S. Government to respect the rights afforded to refugee and asylum seekers as provided under U.S. immigration law, and it has repeatedly raised its concerns about the safety of the immigrant children who have been separated from their parents under the Trump Administration's "zero tolerance" policy.

14. Alianza is a non-profit, social good organization. Alianza intends to share the information that it obtains through this request to educate farmworker women and other community members. Alianza will disseminate this information through its social media platforms and through direct educational efforts with its members across the country, including members living in and around Fort Bliss who may be directly impacted by the construction of

these camps.  Alianza will also disseminate this information to its media contacts and through mass distribution using its mailing list, among other efforts.

15. GreenLatinos is a national nonprofit organization that convenes a broad coalition of Latino leaders committed to addressing national, regional and local environmental, natural resources and conservation issues that significantly affect the health and welfare of the Latino community in the United States.  GreenLatinos seeks to provide an inclusive table at which its members establish collaborative partnerships and networks to improve the environment; protect and promote conservation of land and other natural resources; amplify the voices of minority, low-income and tribal communities; and train, mentor, and promote the current and future generations of Latino environmental leaders for the benefit of the Latino community and beyond.

16. GreenLatinos has demonstrated the ability and clear intent to timely disseminate information received from this FOIA request to a broad audience of persons interested in the subject – including its members, national and local ally organizations who have significant memberships and constituencies interested in this issue, and members of the media who regularly cover immigrant detention.  In addition, GreenLatinos has the ability and intent to share the information it obtains to the public by means of email, website posts, social media posts, and in-person communication including at the organization's National Summit.

17. Labor Council for Latin American Advancement ("LCLAA") is the leading national organization for Latino(a) workers and their families.  LCLAA was born in 1972 out of the need to educate, organize and mobilize Latinos in the labor movement and has expanded its influence to organize Latinos in an effort to impact workers' rights and their influence in the political process.  LCLAA represents the interest of more than 2 million Latino workers in the

American Federation of Labor-Congress of Industrial Organizations (AFL-CIO), the Change to Win Federation, Independent Unions and all its membership.

18. LCLAA is a non-profit organization with a mission to defend and work for immigrant and working family rights. LCLAA plans to disseminate this information for free through its 52 chapters in 23 states, thus further helping to inform the public across the country about this crucial issue. LCLAA will also circulate this information through its social media platforms, and will reach out to national and international media outlets.

19. National Hispanic Medical Association ("NHMA") works to improve the health of Hispanics through advocacy, leadership development and educational activities. The mission of NHMA is to empower Hispanic physicians to lead efforts to improve the health of Hispanic and other underserved populations. NHMA has been involved in advocacy concerning immigration policy and the direct health implications of these policies for families that are detained in government-funded detention centers. NHMA has called on Congress to fix these issues and treat families that are currently detained with the dignity they deserve.

20. NHMA has the ability and intends to share information obtained from this FOIA request through its social media networks and its networks via email and its monthly newsletter.

21. Southwest Environmental Center ("SWEC") is a non-profit conservation organization dedicated to the protection and restoration of native wildlife and their habitats in the Southwest. Headquartered in Las Cruces, New Mexico, SWEC has more than 10,000 members and online activists. SWEC's members and staff live in or regularly visit the U.S.-Mexico borderlands region in New Mexico and Texas and regularly use the myriad federal, state, and local protected lands along the U.S.-Mexico border in New Mexico and Texas for hiking,

camping, viewing and studying wildlife, photography, hunting, horseback riding, and other scientific, vocational, and recreational activities.

22. SWEC has a long history of advocacy within the borderlands region, including advocacy against border militarization and for the protection of human rights and the environment of the Southwest. SWEC has taken a leading role in organizing protests against the construction of a border wall along the U.S.-Mexico border, and has partnered closely with human rights and immigration groups in this fight.

23. SWEC intends to disseminate any information it receives from this request promptly to the public at large via social media. In addition, SWEC intends to draw attention to this information at public events, in letters to editors, and through other means during the course of its advocacy. SWEC will also share any information it receives with local government officials in Las Cruces and Doña Ana County.

24. Plaintiffs use FOIA to obtain information from federal agencies in order to inform their members and the public about immigration, public health, and environmental issues. Plaintiffs regularly convey important information to their members and the public through publications and press releases, as well as by publicly releasing information and documents obtained through FOIA requests.

25. Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by Defendant's failure to timely respond to Plaintiffs' request for expedited processing within the timeframe mandated by FOIA. The requested relief will redress these injuries.

26. Defendant Army is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession or control of the records Plaintiffs seek in this action.

## LEGAL BACKGROUND

27. Enacted in 1966, the Freedom of Information Act was designed to "encourage public disclosure of information" in order to "'ensure an informed citizenry.'" *Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008) (citations omitted). To this end, FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a)(3)(A). These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each record for which it is claimed. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

28. Upon receiving a FOIA request, an agency has twenty working days to respond by determining whether responsive documents exist and whether the agency will release them. 5 U.S.C. § 552(a)(6)(A). Once a determination is made, FOIA further requires agencies to make the requested records themselves "promptly available" to requesting parties. *Id.* § 552(a)(3)(A). An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances." *Id.* § 552(a)(6)(B); 32 C.F.R. § 286.8(c).

29. Over and above these statutory mandates for all FOIA requests, FOIA requires agencies to provide for expedited processing of requests for records in cases in which the requestor demonstrates a compelling need. 5 U.S.C. § 552(a)(6)(E)(i); 32 C.F.R. § 286.8(e)(1). A compelling need exists when the failure to obtain expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual, or when there is an urgency to inform the public concerning an actual or alleged Government activity on a request that is made by an individual primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R. § 286.8(e)(1)(i). In addition, DOD regulations require agency

components to provide for expedited processing of requests for records if loss of substantial due process rights is imminent, or if the failure to obtain expedited processing could reasonably be expected to harm substantial humanitarian interests.  32 C.F.R. § 286.8(e)(1)(ii).

30. Upon receiving a request for expedited processing, an agency must provide a determination of whether the request for expedited processing will be granted within 10 calendar days after the date of the request.  5 U.S.C. § 552(a)(6)(E)(ii)(I); 32 C.F.R. § 286.8(e)(4).  An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing.  5 U.S.C. § 552(a)(6)(E)(iii); 32 C.F.R. § 286.8(e)(4).

31. If an agency withholds responsive records, in whole or in part, the burden is on the agency to prove that an exemption applies and that it outweighs FOIA's policy of disclosure. *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999).

32. Whenever an agency determines that a portion of a record should be withheld under one of FOIA's exemptions, the agency must still release to the public any portions of that record that contain "reasonably segregable" non-exempt information.  5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

33. FOIA provides that the district court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

**FACTUAL BACKGROUND**

34. In May 2018, the Trump Administration announced its "zero-tolerance" immigration policy, under which the U.S. Government has taken a stricter stance on illegal crossings at the Mexico border, including increased detention of immigrants and separation of

children from their parents or guardians. In June 2018, the Trump Administration announced that it would pursue plans to construct semi-permanent immigration detention camps at Fort Bliss to detain as many as 20,000 immigrants.

35. On August 8, 2018, Plaintiffs submitted a FOIA request to the United States Department of the Air Force ("Air Force") seeking several categories of records including, but not limited to, records concerning known or suspected toxic sites at Goodfellow Air Force Base in Texas and Fort Bliss that have the potential to cause dangerous human exposure to toxic chemicals via air, water, and soil to immigrants detained at and to workers constructing proposed detention camps at the military bases. Plaintiffs also asked that the FOIA request be processed on an expedited basis pursuant to 32 C.F.R. § 286.8(e) in light of the urgent need to inform the public, the imminent threat to the lives and physical safety of the families and children who would be detained in these proposed camps, and the substantial humanitarian interests at stake.

36. On August 17, 2018, Plaintiffs submitted a similar FOIA request to Defendant Army seeking records concerning known or suspected toxic sites at Fort Bliss that have the potential to cause dangerous human exposure to toxic chemicals via air, water, and soil to immigrants detained at Fort Bliss and to workers constructing the detention camps. A copy of the request is attached to this complaint as Exhibit A. Additionally, the request seeks other categories of records, including (but not limited to) records concerning:

- Fort Bliss's 24-hour call center that was created for those who believe they may have been exposed to contaminated materials;
- the location at Fort Bliss of the proposed immigrant detention camps;
- the testing of environmental media at and surrounding the proposed location;
- environmental hazards or concerns that pertain to the proposed location;

- the testing that has been conducted for health and environmental hazards that uniquely impact women and children at the proposed location;
- the type of dwellings that will be constructed;
- the expected or actual date of occupancy of the immigrant detention camps, the number of expected occupants, and the number of single and family dwellings;
- the last date that documents have been purged or destroyed as related to environmental reports or hazards on Fort Bliss, the type of documents, a description of the documents and the individual(s) responsible for requesting the destruction or purge of said documents;
- the number of workers who will be employed in the construction of the immigrant detention camps, the type of workers, the length of time for which they will be employed and any job descriptions related to their role/function to build the detention camps;
- the Environmental Assessment and Environmental Impact Assessment completed for the proposed construction of the immigrant detention camps; and
- the U.S. Navy draft or final planning memorandum that identifies the specific DOD facilities at which immigrant detention camps may be constructed by the Trump Administration.

37. Plaintiffs also asked that their FOIA request to Defendant Army be processed on an expedited basis pursuant to 32 C.F.R. § 286.8(e) in light of the urgent need to inform the public, the imminent threat to the lives and physical safety of the families and children who would be detained in these proposed camps, and the substantial humanitarian interests at stake.

38. Plaintiffs' request for expedited processing of their FOIA requests to Defendant Army was in conformance with the requirements for such requests set forth in FOIA and DOD's regulations. Plaintiffs stated that the FOIA request meets the criteria for expedited processing under DOD's regulations, 32 C.F.R. § 286.8(e), as Plaintiffs urgently need the information to inform their members and the public about imminent government plans to detain thousands of immigrant families and unaccompanied minors at Fort Bliss; the failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to the lives or physical safety of the adults and children detained at Fort Bliss; and the failure to obtain the requested information could reasonably be expected to harm substantial humanitarian interests. As Plaintiffs stated in their request, Fort Bliss has numerous areas under investigation where past military operations have contaminated soil, and potentially water and air, with hazardous chemicals that can cause cancer, neurological damage and injury to major human organs. Furthermore, the DOD is currently investigating these areas pursuant to the requirements of the federal Superfund program, but the contaminated and unsafe areas have not yet been remediated and the threat has not yet been clearly delineated.

39. Plaintiffs submitted their FOIA request to Defendant Army by mail and email according to the instructions on Defendant's public-facing website on August 17, 2018. *See* Records Management and Declassification Agency, U.S. Army, Army Freedom of Information Act Contact, https://www.rmda.army.mil/foia/RMDA-FOIA-Contact.html?param=CI0-S3J-I5D-CMT (last visited Aug. 28, 2018). Plaintiffs received confirmation from the U.S. Postal Service package tracking that the request was delivered to Defendant on Monday August 20, 2018, at 8:24 am. Plaintiffs submitted their request via email to the email address listed on the website, usarmy.belvoir.hqda-oaa-ahs.mbx.rmda-foia@mail.mil, but received an email delivery failure

notification in response, which stated that Defendant Army's servers had rejected the email. Plaintiffs also submitted their request via email to the FOIA Public Liaison Officer's email address, listed on the website, and received the same email delivery failure notification.

40. On August 23, 2018, Plaintiffs received an acknowledgment letter from the Air Force confirming receipt of their August 8, 2018 FOIA request to the Air Force, which (among other things) notified Plaintiffs that their request for records related to Fort Bliss was being transferred to Defendant Army's Fort Bliss FOIA office.

41. On August 28, 2018, Plaintiffs received an acknowledgement letter from Defendant Army's FOIA Office at Fort Bliss confirming receipt of the August 8, 2018 FOIA request that had been forwarded to Defendant Army by the Air Force. The August 28, 2018 letter made no reference to Plaintiffs' request for expedited processing in their Air Force FOIA request and did not acknowledge or reference Plaintiffs' August 17, 2018 FOIA request.

42. Defendant Army has yet to confirm receipt of Plaintiffs' August 17, 2018 FOIA request or provide any response to Plaintiffs regarding that request. Indeed, since sending their August 17, 2018 FOIA request to Defendant Army, Plaintiffs' counsel have made multiple attempts by telephone and email to contact Defendant Army's national FOIA office, FOIA Public Liaison, and the Fort Bliss FOIA Public Liaison, and have yet to receive any response to any of their inquiries concerning the status of their request.

43. To date, Defendant Army has not responded to Plaintiffs' request for expedited processing of either their (forwarded) August 8, 2018 FOIA request to the Air Force or their August 17, 2018 FOIA request to Defendant Army, let alone released any records or other information in response to either request.

## CLAIM FOR RELIEF

44. Plaintiffs re-allege and incorporate the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

45. By failing to timely respond to Plaintiffs' request for expedited processing of their August 17, 2018 FOIA request, Defendant Army has violated FOIA and DOD's regulations promulgated thereunder. 5 U.S.C. § 552(a)(6)(E)(ii); 32 C.F.R. § 286.8(e)(4).

46. FOIA authorizes Plaintiffs to seek judicial review of Defendant Army's failure to timely respond to Plaintiffs' request for expedited processing without further exhausting any administrative remedies.

47. Plaintiffs are entitled to expedited processing of their FOIA request under the standards contained in FOIA and DOD's regulations.

48. Plaintiffs are entitled to obtain the requested records from Defendant Army as soon as is practicable.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment:

(1) declaring that Defendant Army has violated FOIA by failing to timely respond to Plaintiffs' request for expedited processing of their FOIA request;

(2) ordering that Defendant Army process Plaintiffs' FOIA request as soon as is practicable;

(3) ordering that Defendant Army, upon completion of such expedited processing, make all requested records promptly available to Plaintiffs;

(4) retaining jurisdiction over this case to rule on any assertions by Defendant Army that any responsive records, in whole or in part, are exempt from disclosure;

(5) awarding Plaintiffs' litigation costs and reasonable attorneys' fees in this action;

and

(6) ordering such other relief as the Court may deem just and proper.

DATED:  August 31, 2018                        Respectfully Submitted,

*/s/* Thomas J. Cmar
Thomas J. Cmar (TC 8791)
Earthjustice
1101 Lake Street, Suite 405B
Oak Park, IL 60301
T: (312) 257-9338
E: tcmar@earthjustice.org

Mychal R. Ozaeta (to be admitted *pro hac vice*)
Earthjustice
1617 John F. Kennedy Blvd., Suite 1130
Philadelphia, PA 19103
T: (215) 717-4529
E: mozaeta@earthjustice.org

Melissa Legge (to be admitted *pro hac vice*)
Earthjustice
48 Wall Street, 15th Fl.
New York, NY 10005
T: (212) 823-4978
E: mlegge@earthjustice.org

*Counsel for Plaintiffs Hispanic Federation, Alianza Nacional de Campesinas, GreenLatinos, Labor Council for Latin American Advancement, National Hispanic Medical Association, and Southwest Environmental Center*